IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**TIFFANY ESPINOSA,**

                **Plaintiff,**        Case No. 23-1163-DDC-RES

v.

**TODD ALLEN, et al.,**

                **Defendants.**

## MEMORANDUM AND ORDER

Defendant Todd Allen, a former City of Hutchinson police officer, is a convicted serial rapist. Defendant Allen targeted women in their cars in Hutchinson parks while he was off duty. Defendant Allen attacked six other women before he attacked plaintiff Tiffany Espinosa in 2015. Plaintiff reported the rape to the Hutchinson Police Department the next day and told police she believed the rapist was an HPD officer. After he attacked plaintiff, defendant Allen attacked three more women. He was arrested in 2022. Plaintiff filed this lawsuit in 2023 against (i) defendant Allen, (ii) Dick Heitschmidt, the former Chief of Police for the Hutchinson Police Department, and (iii) the City of Hutchinson. Doc. 1.

Defendants Heitschmidt and the City move to dismiss plaintiff's Complaint. Doc. 8. They argue plaintiff's claims are time-barred because the rape occurred in 2015 and plaintiff didn't sue until 2023—long after the two-year statute of limitations had expired. *Id.* at 1. Plaintiff argues that she couldn't have filed suit in 2015 because she didn't know defendant Allen's identity until 2022. For that reason, plaintiff argues, her claims are timely. This Memorandum and Order decides the pending Motion to Dismiss (Doc. 8). It begins with the relevant background.

I.      **Background**

The following facts come from plaintiff's Complaint (Doc. 1). The court accepts them as true and views them in the light most favorable to plaintiff. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

Defendant Allen worked as a City of Hutchinson police officer from October 1994 to January 2019. Doc. 1 at 3 (Compl. ¶ 13). Defendant Heitschmidt served as Chief of Police for the Hutchinson Police Department from 1992 to September 2018. *Id.* (Compl. ¶ 14).

### *The October 2015 Attack*

In October 2015, plaintiff—then 19 years old—and her boyfriend parked their car at Carey Park in Hutchinson. *Id.* at 6 (Compl. ¶ 21). Late at night, defendant Allen approached the car, shined a light in plaintiff and her boyfriend's faces, and identified himself as a police officer. *Id.* Defendant Allen ordered plaintiff to exit the vehicle and told her boyfriend to remain. *Id.* (Compl. ¶ 22). Defendant Allen took plaintiff's information and appeared to radio a dispatcher. *Id.* Defendant Allen then told plaintiff that she had a warrant out for her arrest because of a traffic citation and told plaintiff's boyfriend he could leave. *Id.*

Defendant Allen placed plaintiff under arrest and took her to a secluded area of the park, where he raped her. *Id.* at 5–6 (Compl. ¶¶ 23–24). Plaintiff was terrified during the rape, believing defendant Allen intended to kill her. *Id.* at 6–7 (Compl. ¶ 24). When plaintiff's boyfriend came looking for her, defendant Allen abandoned his attack and fled. *Id.*

Plaintiff reported the attack to the Hutchinson Police Department—led by defendant Heitschmidt—the next morning. *Id.* at 7 (Compl. ¶ 25). Plaintiff described the attacker as a white male who she believed was an HPD officer. *Id.* (Compl. ¶ 27). HPD told plaintiff they were aware of a man engaging in similar conduct with other women. *Id.* (Compl. ¶ 26). But

HPD didn't take plaintiff seriously.  *Id.* (Compl. ¶ 27).  The officer taking the police report put his pencil down and began laughing.  *Id.*

HPD never offered plaintiff an opportunity to go the hospital for treatment and evidence collection, as best practices required.  *Id.* (Compl. ¶ 28).  HPD made no attempt to collect physical evidence of any kind.  *Id.*  No HPD officer ever followed up with plaintiff after her initial statement.  *Id.* (Compl. ¶ 29).

### *Attacks Before and After Defendant Allen Attacked Plaintiff*

Six other, similar attacks preceded defendant Allen's attack on plaintiff:

- **October 2012**:  A man, later identified as defendant Allen, acting like a police officer, approached C.M. and her boyfriend in Carey Park, shined a flashlight in their faces, ordered C.M. out of the vehicle, and sexually assaulted her.  *Id.* at 3–4 (Compl. ¶ 15).

- **July 2013**:  A man, later identified as defendant Allen, approached M.N.M. and her boyfriend in Rice Park in Hutchinson, shined a flashlight in their faces, told M.N.M. he was park security, ordered her out of the vehicle, and sexually assaulted her.  *Id.* at 4 (Compl. ¶ 16).

- **August 2013**:  HPD Officer Freeman stopped a vehicle leaving Carey Park and found C.L.R., hysterical.  *Id.* at 4–5 (Compl. ¶ 17).  C.L.R. told him that a man, later identified as defendant Allen, had identified himself as a police officer, told her to get out of her car, fondled her and attempted to rape her, then fled when C.L.R. began to scream.  *Id.*

- **October 2013**:  A man, later identified as defendant Allen, approached K.R.S. and her friend in their car at Rice Park, shined a flashlight in K.R.S.'s face and ordered her to exit the vehicle.  *Id.* at 5 (Compl. ¶ 18).  When K.R.S. demanded identification, defendant Allen didn't comply, so K.R.S. yelled for help and defendant Allen fled.  *Id.*

- **February 2014**:  A man, later identified as defendant Allen, approached C.N.K. and her brother in Carey Park, shined a flashlight in their car, and, acting like a police officer, ordered C.N.K. out of the vehicle, then he led her away from the vehicle.  *Id.* (Compl. ¶ 19).  Defendant Allen sexually assaulted her and when C.N.K. told him to stop, Allen responded it "was not his fault that young, stupid girls like her go to the park to get raped."  *Id.*  Defendant Allen then let C.N.K. go.  *Id.*

- **October 2014**:  A man, later identified as defendant Allen, approached V.T.Z. in a vehicle with her boyfriend, indicated he was a police officer, and demanded that V.T.Z. exit the vehicle while shining a light in her eyes.  *Id.* at 5–6 (Compl. ¶ 20).  Defendant Allen asked if she had any drugs, then ordered V.T.Z. to lift up her shirt.  *Id.*  V.T.Z. demanded to see Allen's identification and defendant Allen told V.T.Z. to leave the area.  *Id.*

HPD didn't follow standard rape investigation practices with any of these six prior victims.  *Id.* at 7 (Compl. ¶ 29).  After attacking plaintiff, defendant Allen attacked at least three other women.  *Id.* at 8 (Compl. ¶ 33).

### *HPD's Failure to Refer the Case to an Outside Agency*

Though plaintiff had identified her attacker as a potential HPD officer, the HPD never referred her case to an outside agency for investigation.  *Id.* at 7–8 (Compl. ¶ 30).  Nor did the HPD ever refer the six earlier cases to an outside agency for review.  *Id.*  External review of an accused law enforcement officer is both standard protocol and best practice in a situation like this one, where a victim has accused a law enforcement officer of a crime.  *Id.* at 8 (Compl. ¶ 31).  External review is important, particularly when the law enforcement officer remains unidentified.  *Id.*  And the HPD is a small agency.  *Id.* (Compl. ¶ 32).  The other law enforcement agency, the Reno County Sheriff's Office, is relatively small, too.  *Id.*  So, an outside investigation was appropriate.  *Id.*  Defendants Heitschmidt and the City of Hutchinson could have referred the matter to the Kansas Bureau of Investigation—a law enforcement agency with the requisite jurisdictional authority.  *Id.*  And the KBI would have had to conduct no more than a limited investigation, given the relatively small number of officers.  *Id.*

### *A New Chief in Town*

Defendant Heitschmidt retired as Police Chief in September 2018.  *Id.* (Compl. ¶ 34).  Jefferey Hooper replaced defendant Heitschmidt.  *Id.*  Chief Hooper changed the culture and professionalism of the HPD, terminating members of defendant Heitschmidt's administration.

4

*Id.* at 9 (Compl. ¶ 35).  Several others resigned, including defendant Allen.  *Id.*  In November 2018, Chief Hooper convened a press conference, where he warned the public that a serial rapist was preying on women in Hutchinson parks and the rapist was acting as a law enforcement officer.  *Id.* (Compl. ¶ 36).  This marked the first time that defendant City of Hutchinson had informed the public about the serial rapist, though the government had known about it for years.  *Id.*  The sexual assaults stopped immediately.  *Id.*

Chief Hooper announced the arrest of defendant Allen on August 17, 2022.  *Id.*  Plaintiff heard nothing about her case until August 14, 2022, when she was informed that the police had arrested her assailant.  *Id.* at 10 (Compl. ¶ 41).  Before the August 2022 press conference, plaintiff didn't know the identity of the rapist.  *Id.*  Nor did plaintiff know that defendant Allen had attacked many other women.  *Id.*

Plaintiff now sues defendants Allen, Heitschmidt, and the City of Hutchinson, as the operator of the HPD.  Defendants Heitschmidt and the City of Hutchinson have moved to dismiss plaintiff's Complaint.  The court recites the legal standard governing the motion, next.

## II.     Legal Standard

Fed. R. Civ. P. 12(b)(6) allows a party to move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting

5

*Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true. But this obligation doesn't mean that the court is "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**III.     Analysis**

The court considers just one argument from defendants Heitschmidt and the City of Hutchinson's Motion to Dismiss: the statute of limitations. The court begins its timeliness analysis with plaintiff's federal claim against the City of Hutchinson. Then, it analyzes the timeliness of plaintiff's state law claims against the City and defendant Heitschmidt. Ultimately, the court finds that plaintiff's claims against the City and defendant Heitschmidt are barred by the statute of limitations. The court then considers whether equitable tolling applies to cure plaintiff's statute of limitations problem, and, finally, recites its conclusions.

**A.     Federal Claim**

Plaintiff brings one federal claim against defendant City of Hutchinson: a § 1983 claim for violating her Fourth Amendment rights. The City asks the court to dismiss this claim as time-barred because, the City argues, it began to accrue in 2015. Plaintiff responds that her claim didn't begin to accrue until HPD arrested defendant Allen and revealed his identity—in 2022. Notwithstanding the horrid facts alleged by plaintiff's Complaint, the court concludes, below, that binding Circuit precedent dictates plaintiff's claim began to accrue in 2015. And so, her § 1983 claim is time-barred.

When Congress enacted § 1983, it failed to establish a statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 239 (1989) ("In this case, we again confront the consequences of Congress' failure to provide a specific statute of limitations to govern § 1983 actions."). To fill this gap, courts apply "the most analogous limitations period provided by state law." *Hamilton v. City of Overland Park, Kan.*, 730 F.2d 613, 614 (10th Cir. 1984). In Kansas, that's the two-year statute of limitations for personal injury torts. *Id.* (citing Kan. Stat. Ann. § 60-513(a)(4)); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts.").

Plaintiff filed her lawsuit on August 11, 2023. Doc. 1. The rape occurred in 2015. So, the alleged violation of plaintiff's Fourth Amendment rights occurred well beyond the two year statute of limitations. Plaintiff doesn't dispute this conclusion. Instead, plaintiff argues that her § 1983 claim against defendants began to accrue on August 17, 2022, when defendants identified defendant Allen as a suspect. Doc. 14 at 4. Plaintiff argues she couldn't have filed a complete action in 2015 against any defendant. *Id.* To evaluate plaintiff's argument, the court must wade into the law governing accrual of § 1983 actions.

Though state law provides the statute of limitations time period, *federal* law governs accrual of claims. *Wallace*, 549 U.S. at 388 ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). Plaintiff's accrual argument invokes a doctrine known as the discovery rule. "In general, under the federal discovery rule, claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of [her] action."

*Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quotation cleaned up). And in "particular, a civil rights action accrues when facts that would support a cause of action are or should be apparent." *Id.* (quotation cleaned up).

Plaintiff argues that her § 1983 claim began to accrue in 2022 because, until then, she didn't know who caused her injury. That is, "the identity of the police officer who caused the injury or even the agency he was employed by was unknown to her." Doc. 14 at 4. So, plaintiff asserts, she "had no possibility of filing a complete action in Court in 2015 against any Defendant." *Id.* And, plaintiff emphasizes, it "'is settled law in the majority of circuits that the issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury.'" *Id.* at 4–5 (quoting *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387–88 (10th Cir. 1985)).

The City of Hutchinson responds, emphasizing that plaintiff's claim began to accrue when her *injury* occurred—in 2015. Doc. 16 at 1. And the City cites several cases where our Circuit and other district courts within our Circuit "have repeatedly held that the fact that a plaintiff does not know a tortfeasor's identify does not delay accrual." *Id.* at 2 (collecting authorities). The City's right. The court explains why, below, using a review of the governing and persuasive case authority.

The court's research has led it to a case with similar facts: *Paige v. Police Department of the City of Schenectady*, 264 F.3d 197 (2d Cir. 2001). There, plaintiff brought a civil rights suit, alleging "that twenty years ago, when she was twelve years old, Schenectady police officer Michael Guthinger sexually assaulted her" and the police department engaged in a cover-up. *Id.* at 198. Plaintiff "reported the assault to the police and gave a detailed statement in which she described her assailant and identified the number of his patrol car." *Id.* The police then told

8

plaintiff "that there was insufficient evidence to pursue her case" and, when plaintiff's representatives inquired later, the police claimed that no investigatory file existed. *Id.* at 198–99. Fifteen years after the assault, a reporter told plaintiff "that the police department *did* possess an investigatory file" about the assault. *Id.* at 199 (emphasis added). The file suggested "that the police had identified Officer Guthinger as the suspect, but deliberately failed to pursue the case." *Id.* Plaintiff sued Officer Guthinger, the police department, and the city one year after she learned about the investigatory file. The district court concluded plaintiff's § 1983 assault claim was time-barred. The Second Circuit affirmed.

The Circuit cited law "holding that a § 1983 claim accrues 'when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm[.]'" *Id.* at 200 (quoting *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994)). The Second Circuit held that plaintiff "clearly ha[d] known of the assault since" it occurred—when she was a minor. *Id.* at 199–200. So, plaintiff's claim began to accrue when she reached the age of majority and thus was time-barred. *Id.* The Second Circuit also declined to apply equitable tolling based on the police department's fraudulent concealment "because the concealment did not deprive [plaintiff] of the information that she needed to bring a § 1983 suit charging assault." *Id.* at 200. In sum, the *Paige* plaintiff knew about her claim when the assault occurred and she identified the assailant as a police officer—even though she later found out that the police department had conducted a woefully inadequate investigation of the assault.

Our Circuit's precedent is in accord. "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993) (collecting cases). And "for

purposes of a § 1983 claim, the relevant 'injury' is the alleged constitutional violation." *Est. of Roemer v. Johnson*, 764 F. App'x 784, 790 (10th Cir. 2019) (citing *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998)). To demonstrate these principles, the court reviews two cases below: *Alexander v. Oklahoma* and *Smith v. TFI Family Services, Inc.*

In *Alexander*, survivors, and descendants of survivors of the infamous Tulsa race riots brought civil rights claims against the City of Tulsa. 382 F.3d at 1211. The claims relied on the City's complicity in the riots. *Id.* Though the riots had occurred in 1921 and plaintiffs sued in 2003, plaintiffs argued that the claim didn't accrue at the time of injury. *Id.* at 1215. Instead, plaintiffs argued "that the causes of action lay dormant until" 1997, when a state commission released a report about the riots. *Id.* at 1212, 1215–16. Until the commission issued this report, plaintiffs argued, "they did not know the level of culpability or responsibility of the City and the State." *Id.* at 1215–16. The district court found the claims nonetheless time-barred. And our Circuit affirmed.

It noted "that a plaintiff need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Id.* at 1216. Instead, our Circuit instructed courts to "focus on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Id.* Given these principles, the Circuit declined to adopt the *Alexander* plaintiffs' accrual argument. *Id.* It explained, "their argument would require us to craft a rule delaying accrual of a cause of action until a plaintiff has *detailed* knowledge of the level of culpability of each of the actions involved. This we cannot do." *Id.* (emphasis added). The Circuit thus concluded that the *Alexander* plaintiffs' "injuries and the general cause of those injuries were obvious in the aftermath of the Riot. To start the running of the statute of limitations, our case law requires nothing more." *Id.*

In *Smith v. TFI Family Services, Inc.*, plaintiff sued Kansas Department for Children and Families employees.  No. 17-2235-JWB, 2019 WL 6037380, at *1 (D. Kan. Nov. 14, 2019). Plaintiffs, asserting civil rights claims, alleged one of DCF's private contractors placed her in abusive foster home from 2008 to 2009.  *Id.*  Plaintiff alleged DCF received numerous calls about child abuse in the foster home but failed to determine sufficiently whether plaintiff was safe in the home.  *Id.*  Plaintiff also alleged DCF knew or should've known that its private contractor had failed to meet its contractual duties.  *Id.* at *2.  Plaintiff filed her lawsuit 10 years after the abuse and the DCF employees moved to dismiss, arguing plaintiff's § 1983 claim against them was time-barred.  *Id.*  Plaintiff responded that her claim didn't begin to "accrue until she received some confidential DCF documents on November 30, 2018[.]"  *Id.*  Plaintiff argued "she did not have knowledge of the" DCF employees' "involvement until November 2018."  *Id.* at *4.  Our court found this argument "unavailing."  *Id.*

The court concluded that plaintiff's pleading showed she "was aware by October 2009 that she had suffered the abuse she now alleges was proximately caused by the" DCF employees. *Id.* at *5.  Indeed, plaintiff reported the abuse to the DCF contractor.  *Id.*  So, our court explained, plaintiff "had reason to know at that time that she had been deprived of her asserted rights to a safe placement and to be free from harm in foster care, and that this harm resulted in part from the decision to place her in the Wilkins home."  *Id.*  And "that DCF was responsible for placement decisions was known or should have been known in October of 2009" because "DCF bore responsibility for the placement and safety of children placed in DCF custody."  *Id.*  Our court also cited *Alexander*'s holding "that a plaintiff need not have detailed knowledge of the level of culpability of each of the actors involved to trigger the statute of limitations."  *Id.* (citing *Alexander*, 382 F.3d at 1216.).  The court emphasized that "the discovery rule has not been

11

construed to mean that a plaintiff must understand her legal rights have been violated before a claim accrues. It is knowledge or notice of facts underlying the injury and causation that trigger accrual of a claim." *Id.*

Applying these principles to the difficult facts alleged here, the court concludes that plaintiff's § 1983 claim against defendant City of Hutchinson for violating her Fourth Amendment rights is time-barred. Plaintiff alleges the City of Hutchinson's police department and its employees—including defendant Heitschmidt—"caused Plaintiff to be subjected to rape and other sexual abuses in violation of her rights under the Fourth Amendment." Doc. 1 at 13 (Compl. ¶ 58). This alleged constitutional violation occurred in 2015. And, in 2015, plaintiff identified her assailant as a Hutchinson Police Officer. *Id.* at 7 (Compl. ¶ 27). In *Paige*, the Second Circuit concluded that plaintiff had enough information to bring her claim because she "clearly" knew "of the assault" when it occurred—even though she didn't know the police officer's identity until 15 years later. 264 F.3d at 199–200. So, plaintiff had enough information to bring her § 1983 claim in 2015.

Plaintiff argues she didn't know which agency defendant Allen worked for until 2022. Doc. 14 at 4. But plaintiff had identified her assailant as a Hutchinson police officer in 2015. Doc. 1 at 7 (Compl. ¶ 27). Plaintiff didn't need to know the specific agency when she already believed her assailant was an HPD officer. Our Circuit has rejected "delaying accrual of a cause of action until a plaintiff has *detailed* knowledge of the level of culpability of each of the actors involved." *Alexander*, 382 F.3d at 1216 (emphasis added). Instead, to "start the running of the statute of limitations," our Circuit requires only a plaintiff's "injuries and the *general* cause of those injuries[.]" *Id.* (emphasis added). Plaintiff was aware of both her injury and the general cause of her injury in 2015.

12

Plaintiff also accuses the City of Hutchinson and its police department of a variety of failures—failure to warn the public, failure to investigate, failure to train, failure to control, etc.—and that these failures breached a host of duties the City owed her.  But the essence of plaintiff's § 1983 claim is that HPD facilitated and enabled defendant Allen's rape of plaintiff.  Many of HPD's alleged failures occurred in 2015.  HPD's allegedly shoddy investigation started right away, when HPD failed to take plaintiff seriously and laughed at her when she made her police report.  Just as in *Smith*, where plaintiff knew DCF bore responsibility for her safety, here, plaintiff knew HPD bore responsible for her safety.  And so, she knew HPD had failed her in its responsibility in 2015 because, by then, she had identified her assailant as an HPD officer.  To be sure, plaintiff didn't fully grasp the depth of HPD's alleged failures until 2022.  But "a plaintiff need not have detailed knowledge of the level of culpability of each of the actors involved to trigger the statute of limitations."  *Smith*, 2019 WL 6037380, at *5 (citing *Alexander*, 382 F.3d at 1216.).  Plaintiff knew of the assault in 2015 and she believed her assailant was an HPD officer in 2015.  So, she had enough knowledge to bring her claim against the City of Hutchinson in 2015.

In sum, plaintiff's § 1983 claim against the City of Hutchinson is time-barred.  The court grants the portion of the City's motion asking the court to dismiss this claim.  The court turns to plaintiff's state law claims against the City and defendant Heitschmidt, next.[1]

---

[1] Federal question jurisdiction confers subject matter jurisdiction on the court over plaintiff's federal claims, and supplemental jurisdiction provides jurisdiction over her state law claims.  Though the court dismisses plaintiff's federal 42 U.S.C. § 1983 claim against the City of Hutchinson, the court still exercises supplemental jurisdiction over the state law claims.  That's so because the relevant statute governing supplemental jurisdiction allows a district court to decline to exercise supplemental jurisdiction when it "has dismissed *all* claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(e) (emphasis added).  Plaintiff's § 1983 claim against defendant Allen remains, so the court hasn't dismissed *all* claims over which it has original jurisdiction.

13

B.     **State Claims**

Plaintiff brings several state law claims against the City and defendant Heitschmidt:

- Count V:  negligence against defendant Heitschmidt, Doc. 1 at 17–18 (Compl. ¶¶ 81–85);

- Count VI:  agency liability against the City, *id.* at 18–19 (Compl. ¶¶ 86–94);

- Count VII:  breach of fiduciary duty against all defendants, *id.* at 19–20 (Compl. ¶¶ 95–100);

- Count VIII:  negligent failure to train and supervise against the City, *id.* at 21 (Compl. ¶¶ 101–06).

The Motion to Dismiss argues that Kansas's statute of limitations bars these claims, as well, for the same reasons that plaintiff's federal claim was time-barred. Doc. 9 at 5. The court agrees.

The parties agree that Kansas's two-year statute of limitations applies to these claims. *See id.* at 4; Doc. 14 at 5. Kansas's statute also prescribes an accrual rule:

> [An action for injury to the rights of another] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party[.]

Kan. Stat. Ann. § 60-513(b). "It is knowledge of the fact of an actionable injury, not the extent, which triggers the statute of limitations." *Moss v. Mamalis*, 138 P.3d 380, 384 (Kan. Ct. App. 2006). "'As a general rule, a cause of action accrues as soon as the right to maintain a legal action arises. The true test to determine when an action accrues is that point in time at which plaintiff could first have filed and prosecuted an action to a successful conclusion.'" *Id.* at 385 (quoting *Knight v. Myers*, 748 P.2d 896, 900 (Kan. Ct. App. 1988)).

This state accrual rule is the same as the federal accrual rule. *See Alexander*, 382 F.3d at 1215 ("In general, under the federal discovery rule, claims accrue, and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the

injury which is the basis of his action." (quotation cleaned up)); *id.* (explaining that in "particular, a civil rights action accrues when facts that would support a cause of action are or should be apparent." (quotation cleaned up)).  So, plaintiff's state law claims are time-barred for the same reason's plaintiff's federal claim is time-barred.

        **C.**       **Equitable Tolling**

Sensing that the statute of limitations might cause problems for her, plaintiff argues, alternatively, for equitable tolling of the statute of limitations.  Recall that state law provides the length of the statute of limitations period in a § 1983 action.  "State law . . . 'governs any tolling of that period, except that federal law might also allow equitable tolling in rare circumstances.'" *Caballero v. Wyandotte Cnty. Sheriff's Dep't*, 789 F. App'x 684, 686 (10th Cir. 2019) (quoting *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)).  "The Kansas Court of Appeals has suggested in unpublished decisions that the [limitations] period can be equitably tolled if a plaintiff has been pursuing his or her rights diligently and some extraordinary circumstance stood in the way and prevented timely filing." *Id.* (quotation cleaned up) (collecting cases).  "While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).  Plaintiff hasn't shouldered this burden here.

Plaintiff argues that the defendants, collectively, "affirmatively prevented Plaintiff from discovering the information necessary to pursue her claims."  Doc. 14 at 5.  Plaintiff asserts that HPD, the entity charged with protecting plaintiff and investigating the attack, prevented plaintiff from learning defendant Allen's identity "either through complicity, negligence, or potential fraud." *Id.*  Plaintiff points out that HPD summarily dismissed her allegations and sent her home.  So, plaintiff concludes, defendants "should not be permitted to benefit from their actions"

15

and "[p]ublic policy should prevent" defendants from asserting a statute of limitations defense. *Id.*

But plaintiff identified her attacker as an HPD officer in 2015. In 2015, an HPD officer laughed at plaintiff when she made her police report. And, in 2015, HPD failed to collect physical evidence or follow standard investigative practices for a rape investigation. So, defendants Heitschmidt and the City of Hutchinson didn't deprive plaintiff of the information she needed to bring her claim. *See Paige*, 264 F.3d at 200 (declining to apply equitable tolling based on the police department's fraudulent concealment "because the concealment did not deprive [plaintiff] of the information that she needed to bring a § 1983 suit charging assault"). Plaintiff's brief mentions "potential fraud" as a reason to toll the statute of limitations. Doc. 14 at 5. But her Complaint doesn't allege that defendant Heitschmidt or the City of Hutchinson engaged in any kind of fraud. *See generally* Doc. 1. The court thus declines to apply equitable tolling to plaintiff's claims against defendant Heitschmidt and the City of Hutchinson.

## IV.    Conclusion

The court concludes that plaintiff's claims against defendant Heitschmidt and the City of Hutchinson are time-barred, so the court grants their Motion to Dismiss (Doc. 8). It dismisses these claims[2] with prejudice. *See Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (affirming dismissal with prejudice of time-barred claims).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Dick Heitschmidt and the City of Hutchinson, Kansas's Motion to Dismiss (Doc. 8) is granted.

**IT IS SO ORDERED.**

---

[2]    The court dismisses Count II against defendant City of Hutchinson, Count V against defendant Heitschmidt, Count VI against defendant City of Hutchinson, Count VII against defendant Heitschmidt and defendant City of Hutchinson, and Count VIII against defendant City of Hutchinson. Count I, Count III, Count IV, and Count VII against defendant Allen all remain as viable claims.

Dated this 22nd day of July, 2024, at Kansas City, Kansas.

                **s/ Daniel D. Crabtree**
                **Daniel D. Crabtree**
                **United States District Judge**